WP

FILED

OCT 3 1 2006
Oct 31 2006
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTONIO J. DELGADO and
JAVIER M. DELGADO,

     Plaintiffs,

  v.

VILLAGE OF ROSEMONT, et al.,

     Defendants.

Case NO. 03 C 7050

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

On September 21, 2005, a jury returned a verdict in favor of Plaintiffs Antonio Delgado and Javier Delgado (hereinafter "Plaintiffs") for $50,000 each on a claim under 42 U.S.C. § 1983 for excessive force stemming from an altercation outside the Rosemont Theater in Rosemont, Illinois. Plaintiffs had also brought a § 1983 *Monell* claim for indifference to the use of excessive force against the Village of Rosemont and various state law claims. Thereafter, the parties engaged in discussions to determine the amount of Plaintiffs' reasonable attorneys' fees and costs. The discussions broke down and Plaintiff filed the present Motion for Attorneys' Fees and Costs on August 16, 2006. Defendants did not respond; however, Defendants filed a Proposed Joint Statement Pursuant to Local Rule 54.3 on December 23, 2005 which catalogs Defendants' objections to Plaintiffs' asserted fees

and costs. Plaintiffs' motion responds to these arguments. This Court treats the motion as fully briefed.

## I. **LEGAL STANDARD**

In federal court, a prevailing party is entitled to recover "costs other than attorneys' fees . . . as of course." FED. R. CIV. P. 54(d). Under 42 U.S.C. § 1988, a prevailing party in a § 1983 action may also recover "a reasonable attorney's fee as part of the costs." A prevailing party is a party who "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Id.* Defendants do not contest that Plaintiffs are prevailing parties.

## II. **DISCUSSION**

### A. **Plaintiffs' Requested Attorneys' Fees**

To determine a reasonable amount of attorneys' fees, courts use the "lodestar" method. *People Who Care v. Rockford Bd. Of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996). Under the "lodestar" method, the court determines the "lodestar" by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *People Who Care*, 90 F.3d at 1310. The award may then be adjusted. A district court, however, may not simply "eyeball the fee request and cut it down by an arbitrary percentage because it seemed excessive to the court." *Id.* at 1314.

The movant bears the burden of documenting its fees to the satisfaction of the Court. *Tomazzoli v. Sheedy*, 804 F.2d 93, 96

(7th Cir. 1986). Once this burden is met, the fees are presumptively appropriate unless challenged by the opposing party. *Id.*

Using the "lodestar" method, Plaintiffs seek attorneys' fees of $444,830.00:

| Attorney/Paralegal | Hourly Rate | Hours | Total |
|---|---|---|---|
| David A. Cerda | $375.00 | 637.20 | $238,950.00 |
| John R. DeLeon | $425.00 | 168.20 | 71,485.00 |
| Peter V. Bustamante | $375.00 | 130.00 | 48,750.00 |
| David R. Breed (Paralegal) | $175.00 | 487.80 | 85,365.00 |
| Salvitore Castellano (Paralegal) | $100.00 | 2.80 | 280.00 |

**B. Revised Lodestar**

**1. *Number of Hours***

a. *Reduction for Inefficient Prosecution*

Defendants argue that the requested hours should be reduced because Plaintiffs inefficiently prosecuted this case. In determining a reasonable number of hours, a court should exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Defendants suggest that Plaintiffs directed discovery toward a "self-created conspiracy theory" that Defendants were withholding surveillance footage, deposed eleven individuals who did not testify at trial, and expended a great deal of time in a case that was essentially a

simple assault and battery case. Plaintiffs argue that they made efficient use of attorneys' time and that they more leanly staffed the case than Defendants. Plaintiffs expended approximately half as many hours as Defendants; only one attorney attended depositions (whereas Defendants often used two attorneys) and handled discovery (whereas Defendants used seven attorneys). Plaintiffs' most expensive attorney, Mr. DeLeon, was used primarily at trial. The depositions contested by Defendants were reasonable as the Defendants had identified the deponents as fact witnesses. In general, this court believes that Plaintiffs efficiently litigated this case, especially in light of Defendants' greater expended hours. Thus, no reduction will be made on this ground alone.

Defendants also argue that a number of time entries reflect excessive time expended on certain tasks in light of Plaintiffs' attorneys' experience and the nature of the case; however, the Plaintiffs' penchant for block billing and vague entries makes such an inquiry virtually impossible. Where a court finds hours to be insufficiently documented, it may disallow those hours or reduce the entire fee award by a proportionate amount. *See Harper v. City of Chicago Heights*, 223 F.3d 593, 604-05. This concern will be addressed after a revised lodestar amount has been calculated.

### b. *Attorneys' Non-Billable Tasks*

Defendants object to attorney time spent on non-billable tasks. A court should disallow hours spent on tasks "that are

easily delegable to non-professional assistance." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999). Delegable tasks include drafting letters to court reporters, deliveries, and filings. *Heriaud v. Ryder Transp. Servs.*, 2006 WL 681041 at *3 (N.D. Ill. Mar. 14, 2006); *Farfaras v. Citizens Bank & Trust Co. of Chicago*, 2005 WL 910739 at *3 (N.D. Ill. Apr. 15, 2005). Plaintiffs have requested 4.30 hours for time Mr. Cerda spent on clerical tasks, including phone calls to Judge Leinenweber's clerk and filings (given Plaintiffs' penchant for block-billing, this is this Court's best estimate). As such, this court reduces Mr. Cerda's hours by 4.30 hours.

### c. Paralegals' Non-Billable Tasks

Defendants also objects to hours billed by Plaintiffs' paralegals Mr. Breed and Mr. Castellano. First, Defendants argue that this court should not award Plaintiffs Mr. Breed's fees for certain tasks that were not sufficiently complex to justify their completion by a paralegal. To award paralegal fees, a court must determine "the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder." *Spegon*, 175 F.3d at 553 (quoting *People Who Care*, 90 F.3d at 1315). A court should disallow time spent on "clerical" or "secretarial" tasks. *Id.* Courts have found organizing file folders, preparing document, copying documents, assembling filings, electronically filing documents, sending

materials, docketing or "logging" case events into an internal case tracking system, and telephoning court reporters to be clerical. *See id.; Francis v. Snyder*, 2006 WL 1236052 at * 4 (N.D. Ill. May 4, 2006). In contrast, factual investigation, conducting legal research, summarizing depositions, checking citations, compiling statistical and financial data, preparing court documents, serving process, and discussing the case with attorneys are sufficiently complex. *People Who Care*, 90 F.3d at 1315; *Holland v Barnhart*, 2004 WL 419871 at * 2 (N.D. Ill. Feb. 3, 2004).

Many of Mr. Breed's hours were devoted to "selecting and analyzing information for the case database" which Plaintiffs assert "requires an understanding of the issues and facts of the case." These tasks, however, are billed as follows: "review scan and code documents and build summation database," "work on database," "re-build database," "update database with pleadings correspondence and documents," and "add documents into database." Despite Plaintiffs' protestations to the contrary, these tasks sound like ordinary maintenance of a database. One court recently allowed paralegal fees for entering information into a database; however, that court noted "it appears . . . that Mr. Eslinger reviewed files when he 'organized' them. Making notes during review of significant information is properly charged as attorney time, and it should be no less so if the notes are made electronically in a database." *Bamber v. Elkhart Cmty. Sch.*, 2005

WL 957331 at *6 (N.D. Ind. Mar. 28, 2005). The descriptions of Mr. Breed's work do not suggest that he was doing anything akin to "making notes"; this Court finds this task to be essentially clerical and will not award fees for it. Plaintiffs' invoice for services indicates that Mr. Breed spent approximately 106.80 hours maintaining the database, and his hours will be reduced accordingly.

Additionally, Defendant objects to other hours billed by Mr. Breed for other undoubtedly clerical tasks, including phone calls with clerks, burning CDs, filing documents, mailings, and deliveries. Plaintiffs' invoice for services indicates that Mr. Breed spent approximately 23.40 hours on such tasks, and this Court will thus further reduce his hours by 23.40 hours.

Next, Defendant objects to Mr. Castellano's hours. Plaintiffs claim that Mr. Castellano assisted Mr. DeLeon with discovery in this case. No billing entries indicate that Mr. Castellano worked on discovery issues. Instead, Mr. Castellano's work appears to be telephone calls to and from Mr. Cerda lasting six to twelve minutes (with one exception for written correspondence). No calls were followed by substantive tasks. Because this Court is concerned, but cannot be certain, that Mr. Castellano's work was primarily clerical, it will award Plaintiffs only half of his 2.80 hours billed, 1.40 hours. An equal reduction to Mr. Cerda's hours will be made for these calls.

### d. Mr. Bustamonte's Fees

Defendants argue that Mr. Bustamante's fees of $48,750.00 be denied in their entirety as unnecessary because Javier Delgado already had an attorney, Mr. DeLeon. "Use of more than one lawyer is common in legal practice." *Bohen v. City of East Chicago*, 666 F. Supp. 154, 157 (N.D. Ind. 1987). Courts have granted plaintiffs' requests for attorneys fees where more than one attorney worked a case or attended trial. *See, e.g., Kurowski v. Krajewski*, 848 F. 2d 767 (7th Cir. 1988); *Gatreaux v. Chicago Hous. Auth.*, 2005 WL 1910849 (N.D. Ill. Aug. 9, 2005). As such, this Court awards fees to compensate Mr. Bustamante's work on this case.

### e. Hours in Preparation of Fee Petition

Lastly, Defendants object to hours billed on the issue of fees. Time expended in preparation of a fee petition is compensable so long as the time spent is not disproportionate to that spent on the merits of the case. *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988). Courts in the Seventh Circuit repeatedly have reduced the amount of time spent in preparation of the fee petition so that that amount is less than 10% (and often below 5%) of the total hours expended in prosecution. *See Ustrak*, 851 F.2d at 988 (8.3% ratio allowed, 25% ratio rejected); *Bamber*, 2005 WL 957331 at *9 (reducing amount of time spent on fee petition to 10 hours where 865 hours were spent litigating; 1.15%); *Calkins v. Grossinger City Autocorp, Inc.*, 2003 WL 297516 at * 4 (N.D. Ill.

Feb. 12, 2003)(where total time spent litigating was 130 hours, 15.5 hours excessive (11.9%), 4.1 hours allowed (3.1%)). In this case, Plaintiffs expended a total of 77.50 hours on the issue of fees. Plaintiffs expended a total of 1,210.3 (allowable) hours litigating this case, a ratio of approximately 6.4%.

Although this ratio has previously been permitted, this Court believes that it is too high in this case. Here, Plaintiffs' attorneys spent 28.10 hours merely working on their invoice for services and costs and 24.60 hours "working on" a single fee petition (not even including research hours that most likely were related to that petition). The remaining hours were spent on telephone calls and conferences, drafting motions to extend, research, and reviewing Defendants responses and objections. Considering that Plaintiffs filed only two virtually identical motions for fees, wrote no reply brief, repeatedly delayed the fees process, and spent a mind-boggling 28.10 hours apparently compiling their invoice for services (a document still riddled with *clearly* clerical, non-billable tasks), this Court believes that the time spent was excessive. As such, the Court reduces the hours to 4% of the total hours spent litigating the merits of the case: 49 hours. The Court believes this figure is itself generous. Each attorneys' and paralegals' hours are reduced proportionately:

        Mr. Cerda:  17.50 hour reduction
        Mr. DeLeon:  1.30 hour reduction
        Mr. Bustamonte:  3.90 hour reduction
        Mr. Breed:  5.30 hour reduction

- 9 -

## 2. *Hourly Rates*

Defendants also object to the hourly rates sought by the Plaintiffs. Specifically, Defendants proposes that the attorneys be awarded an hourly rate of $300.00 per hour, whereas Plaintiffs assert that the proper rates are as follows: David A. Cerda - $375.00 per hour; John R. DeLeon - $425.00 per hour; and Peter V. Bustamante - $375.00 per hour. The parties do not dispute that this Court may award Plaintiffs current 2006 rates rather than past rates plus interest. *Mathur v. Bd. of Tr. of Southern Illinois Univ.*, 317 F.3d 738, 744-45 (7th Cir. 2003).

This Court grants Plaintiffs Mr. Cerda's and Mr. Bustamonte's requested hourly rates. In support of its requested rates, Plaintiffs submitted affidavits from a plaintiffs' petition for fees in a 2003 civil rights case that attest that in 2003, hourly rates of $340-$350 and higher were reasonable for attorneys with experience comparable to Mr. Cerda and Mr. Bustamonte. Additionally, Mr. Cerda's affidavit indicates that he was paid at an hourly rate of $325.00 in 2000 and $350.00 in 2003 in the criminal cases which preceded this case. If $350.00 per hour was reasonable in 2003, then $375.00 per hour is reasonable in 2006. Defendants assert that $375.00 is an excessive rate based on two cases; in these cases, however, the parties either agreed that a lower rate was appropriate or the plaintiff requested a lower rate and the court noted that it appeared low. *See Oviedo v. Jones,*

2004 WL 1898662 (N.D. Ill. Aug. 20, 2004); *Garcia v. City of Chicago*, 2003 WL 22175620 (N.D. Ill. Sept. 19, 2003). As such, this Court will award fees for Mr. Cerda and Mr. Bustamante fees at an hourly rate of $375.00.

This Court grants Plaintiffs their requested hourly rate for Mr. DeLeon. Mr. DeLeon has thirty years of legal experience. Although the bulk of this experience is in criminal defense, this Court believes that his extensive courtroom experience would be of great benefit to his clients. The affidavit provided by Plaintiffs indicates that attorneys with comparable experience commanded hourly rates of $405.00 - $550.00 in 2001 and 2002. As such, an hourly rate of $425.00 today seems reasonable.

Defendant, however, argues that Mr. DeLeon should be awarded a lower rate because he was not closely involved with pretrial motions or discovery and did not appear at the depositions or most court appearances. Defendants thus argue that because Plaintiffs efficiently tried this case by using an attorney with a lower billing rate to attend status hearings and write pretrial motions, another of Plaintiffs' attorneys' hourly rate should be reduced. In support of this contention, Defendant cites *Price v. Kramer*, 993 F. Supp. 1295, 1300 (C.D. Cal. 1997). In *Price*, the California district court awarded an attorney a lesser hourly rate despite his extensive experience because the attorney made a small contribution to the successful prosecution of the case, whereas the lead

attorney "performed most of the work." *Id.* Even if *Price* were binding on this Court, Defendant does *not* claim that Mr. DeLeon served only a limited role at trial. Defendants thus mistake the necessary thrust of an argument under *Price*; it matters not how many case-related court appearances an attorney made, but what that attorney contributed when he was on the clock for his client. Plaintiffs note that all of their attorneys helped present their case at trial. Absent any suggestion that Mr. DeLeon's trial contribution was limited, this Court grants Plaintiffs an hourly rate of $425.00 for Mr. DeLeon's work.

Defendants also object to the $175.00 hourly rate requested by Plaintiffs for Mr. Breed's work. Plaintiffs concede that $175.00 is at the high end of paralegals' rates, but argue that it is warranted based on Mr. Breed's Ph.D. (in "theology and science") and experience with computer technology. Defendants suggest a rate of $90.00. Plaintiffs' affidavit indicates that paralegals' rates ranged from $100.00 to $260.00 in 2002 and 2003. For 2005 - 2006, the Laffey matrix used in Washington, D.C. suggests $115.00 per hour for a paralegal. While $175.00 is within this range, this Court believes that it is high considering that Plaintiffs' justification is wobbly: Mr. Breed's Ph.D. is in a field completely unrelated to his work on this case and this Court struck his database maintenance as clerical. Defendants' suggested $90.00 rate, however, is extremely low – lower than even the lowest rate

cited in Plaintiffs' affidavit for 2002. As such, this Court will award Mr. Breed an hourly rate of $125.00 for his non-clerical work.

### 3. *Revised Lodestar*

The revised lodestar for Plaintiffs' attorneys' fees is:

| Attorney/Paralegal | Hourly Rate | Hours | Total |
| --- | --- | --- | --- |
| David A. Cerda | $375.00 | 614.00 | $230,250.00 |
| John R. DeLeon | $425.00 | 166.90 | 70,932.50 |
| Peter V. Bustamante | $375.00 | 126.10 | 47,287.50 |
| David R. Breed (Paralegal) | $125.00 | 352.30 | 44,037.50 |
| Salvitore Castellano (Paralegal) | $100.00 | 1.4 | 140.00 |
| TOTAL | | | $392,647.50 |

## C. Partial Success Reduction

Defendants next request that this court reduce the fees it awards because Plaintiffs were only partially successful. Defendants seek a 75% reduction in hours.

Where a plaintiff has partially prevailed, a court may adjust lower the awarded attorneys' fees. *Hensley*, 461 U.S. at 434-435. District courts must ask first whether the plaintiff failed to prevail on unrelated claims and second whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. *Id.* at 434.

Where a plaintiff fails to prevail on a claim that is based on different facts and legal theories than those he prevailed upon, the attorney's work will be unrelated to his work on the claim prevailed upon – and should not be deemed "expended in pursuit of the ultimate result achieved." *Id.* at 435. This Court cannot award fees expended in those circumstances. *Id.* Defendants contest the fees related to the malicious prosecution and *Monell* claims. The malicious prosecution claim was dismissed by this Court before trial. The Seventh Circuit has held that excessive force and battery claims are not related to malicious prosecution claims (which requires proof that the officers lacked probable cause). *See Lenard v. Argento*, 808 F.2d 1242, 1246 (7th Cir. 1987). Additionally, Defendants argue that Plaintiffs should not be awarded fees for time spent in pursuing the *Monell* claim against the Village of Rosemont because that claim required discovery of evidence not relevant or not otherwise admissible if it had not been maintained. To prevail on a *Monell* claim, a plaintiff must establish that a policy or custom, attributable to municipal policymakers, was the moving force behind a constitutional deprivation. *Concealed Carry, Inc. v. City of Chicago*, 2006 WL 2860975 at * 11 (N.D. Ill. Sept. 28, 2006). This Court believes that the *Monell* claim is not "distinctly different" from the central § 1983 claim against the individual defendants as both arise from the same incident and involve proof of some of the same

facts. As such, Plaintiffs requested hours will be reduced only by the number of hours expended purely toward the malicious prosecution case, 4.50 hours.

Next, this Court must consider whether a plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. *Hensley*, 461 U.S. at 434. Defendants here argue that Plaintiffs' fee request should be reduced by 75% due to Plaintiffs' limited success and a number of other relevant factors. Plaintiffs assert that they prevailed against the *primary* defendants and that they were awarded $100,000. Under *Hensley*, a district court ought to award an attorney a full compensatory fee where the plaintiff has obtained an excellent result (even if the plaintiff did not prevail on every contention raised). *Id.* at 435. Where, however, "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended . . . times a reasonable hourly rate may be an excessive amount." *Id.* Where an excessive amount has been reached, a district court "may simply reduce the award to account for the limited success." *Id.* at 436. A purely mathematical approach whereby the court compares the total number of issues prevailed upon to those not prevailed upon has been rejected. *Id.* at 435.

In this case, Plaintiffs were awarded $50,000.00 each despite requesting a combined total of over $1.5 million. Although much of the requested damages were punitive, the jury awarded Plaintiffs

only 12.5% of the requested compensatory damages (Plaintiffs together requested $1,250,000.00 in compensatory damages). Only three claims went to the jury: the § 1983 claim against the individual defendants, the state law battery claim, and the state law intentional infliction of emotional distress claim. Plaintiffs received damages only on the § 1983 claim, and even there, only against Defendants Jimenez and Minevich. Plaintiffs, however, seek a total of $444,830.00 in attorneys' fees. This appears excessive.

Additionally, Defendants argue that many of Plaintiffs' attorneys' time entries are not sufficiently documented. A petition for fees must set forth a sufficient description of the type of work performed. *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1187 (7th Cir. 1992). Where a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or reduce the proposed fee by a reasonable percentage. *Harper*, 233 F.3d 593 at 605. A court should not require any more than the level of detail paying clients find satisfactory. *In re Synthroid Marketing Litigation*, 264 F.3d 712, 722 (7th Cir. 2001). Specifically, Defendants complain about "block-billing" and vagueness as to particular tasks' nature, subject matter, or necessity. The time entries Plaintiffs have submitted provide little detail and repeatedly block-bill. While Plaintiffs argue that their billing is satisfactory, this court has had no end of trouble attempting to deny Plaintiffs' requested

attorneys' fees for clerical tasks due to the attorneys' and paralegals' penchant for block-billing. This Court was unable to ascertain what hours to attribute to the malicious prosecution claim and had to adopt the figure provided by Plaintiffs in their brief. Additionally, the repeated failure of the attorneys and paralegals to indicate what telephone calls and research concerned, even in the most general of terms, has made it impossible for this Court to evaluate whether these fees were reasonably necessary as already noted. As such, this Court is prepared to make a proportionate reduction of the fees for insufficient description.

Defendants requested a 75% reduction, however, appears excessive. Courts vary greatly in how much they will reduce excessive lodestars. In *Estate of Borst v. O'Brien*, 979 F.2d 511, 516 (7th Cir. 1982) a court reduced its revised lodestar by 40% because the jury awarded the plaintiff less than 1% of the damages sought. In *Merriweather v. Family Dollar Stores of Indiana, Inc.*, 103 F.3d 576, 583 (7th Cir. 1996) a district court reduced the award by 10% where the successful and unsuccessful claims were intertwined and thus time spent on the unsuccessful claims could not be ascertained. Because Plaintiffs' claims were interrelated (with the exception of the malicious prosecution claim) and thus could not be disallowed, Plaintiffs were awarded only a very small amount of the damages sought, and Plaintiffs submitted vague and

block-billed time entries, this Court will reduce the revised lodestar amount by 35%.

After this reduction, the total amount awarded to Plaintiffs in attorney fees is as follows:

| Attorney/Paralegal | Hourly Rate | Hours | Total |
|---|---|---|---|
| David A. Cerda | $375.00 | 609.00 | $228,375.00 |
| John R. DeLeon | $425.00 | 166.90 | 70,932.50 |
| Peter V. Bustamante | $375.00 | 126.10 | 47,287.50 |
| David R. Breed (Paralegal) | $125.00 | 352.30 | 44,037.50 |
| Salvitore Castellano (Paralegal) | $100.00 | 1.4 | 140.00 |
| TOTAL | | | $390,772.50 |
| TOTAL Reduced by 35%: | | | $254,002.12 |

### D. Costs

#### 1. Plaintiffs' Requested Costs

Unless a court directs otherwise, a prevailing party should be awarded costs. *R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, 2005 WL 293512 at * 2 (N.D. Ill. Feb. 8, 2005) (quoting FED.R.CIV.P. 54(d)(1)). A district court has broad discretion in determining "whether and to what extent prevailing parties may be awarded costs." *Weeks v. Samsung Heavy Indus.*, 126 F.3d 926, 945 (7th Cir. 1997). The losing party bears the burden of affirmatively showing that costs are not appropriate. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005).

- 18 -

Defendants do not dispute that the Plaintiffs were a prevailing party. Plaintiffs request $24,411.22 in costs.

### 2. Depositions

Defendants object to $4,756.28 in costs for eleven depositions undertaken because Plaintiffs believed Defendants had conspired to cover up their unlawful actions by purposely destroying the surveillance tapes from *outside* Rosemont Theater. In fact, there is no video surveillance outside Rosemont Theater and Plaintiffs' requests for these tapes were sent after the time frame for routine destruction of the tapes. Plaintiffs claim that the depositions were of defendant witnesses to the incident and others with knowledge of the incident, and that Defendants had identified the deponents as possible fact witnesses in discovery. Courts have allowed attorneys' fees and costs for depositions of deponents who did not ultimately testify at trial as long as taking the depositions was reasonable at the time. *Pawell v. Metro. Pier and Exposition Auth.*, 2005 WL 1902116 (N.D. Ill. Mar. 4, 2005). The deponents had been identified by Defendants as fact witnesses; Plaintiffs reasonably desired to gather this information during discovery. These costs are allowed.

### 3. Costs for Videotaping Depositions

Defendants also object to the $5,808.40 in costs for videotaping depositions because the depositions were taken within six months of trial absent any indication that Defendants'

employees would not be available at trial. Courts in this circuit will not award costs for videotaping depositions where a transcript was also purchased. *Barber v. Ruth*, 7 F.3d 636, 645 (7th Cir. 1993); *Solon v. Kaplan*, 2004 WL 1672909 at *2 (N.D. Ill. Jul. 23, 2004). Plaintiffs have requested costs for both the transcripts and the videotaping; therefore, the costs for the videotaping are disallowed. This court thereby reduces the Plaintiffs' cost award by $5,808.40, to $18,602.82.

## III. **CONCLUSION**

For the reasons stated herein, this Court grants, in part, Plaintiffs' motion for attorneys' fees and expenses. Plaintiffs' are awarded the sum $254,002.12 in attorneys' fees and $18,602.82 in costs. The total amount awarded to Plaintiffs is $272,604.84.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: *October 31, 2006*